827 F.2d 363
 44 Fair Empl.Prac.Cas. 1200,
44 Empl. Prac. Dec. P 37,344,
45 Empl. Prac. Dec. P 37,653
Ernest HILLEBRAND, Appellant,
v.
M-TRON INDUSTRIES, INC., a South Dakota Corporation, Appellee.
 No. 86-5481.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 11, 1987.
Decided Aug. 27, 1987.
Rehearing and Rehearing En Banc Denied Nov. 18, 1987.
 
 Charles E. Light, Jr., Yankton, S.D., for appellant.
 Timothy D. Loudon, Lincoln, Neb., for appellee.
 Before LAY, Chief Judge, HEANEY, Circuit Judge, and LARSON,* Senior District Judge.
 LAY, Chief Judge.
 
 
 1
 This is an age discrimination case brought under the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-34 (1982) (ADEA). Suit was brought by Ernest Hillebrand, an executive vice president of M-Tron Industries, Inc. (M-Tron) located in South Dakota. After extensive discovery, M-Tron moved for, and was granted, summary judgment on the grounds that Hillebrand had failed to make a prima facie case under the requirements of Holley v. Sanyo Mfg., Inc., 771 F.2d 1161 (8th Cir.1985).[1] In addition, the trial court, the Honorable John B. Jones, presiding, granted M-Tron summary judgment on two state law claims.[2] We affirm the grant of summary judgment on the two state counts but remand for plenary trial Hillebrand's claim under the ADEA.
 
 
 2
 Before beginning our discussion of the facts of this case, because of the summary disposition by the district court, we reiterate what has been stated by this court for a number of years: Summary rulings are the direct antithesis of the full and fair process found in an adversary proceeding. See, e.g., Hartford Accident and Indem. Co. v. Stauffer Chem. Co., 741 F.2d 1142, 1144 (8th Cir.1984); Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir.1981) (per curiam); Minnis v. International Union, United Auto., Aerospace and Agric. Implement Workers of Am., UAW, 531 F.2d 850, 854 (8th Cir.1975). Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion.[3] Summary judgments should seldom be used in cases alleging employment discrimination because of the special category in which Congress and the Supreme Court visualized these cases. Knowing that discrimination is difficult to prove by direct evidence, the Supreme Court has interpreted employment discrimination cases as requiring simplified proof from a claimant in order to create an inference of discrimination and thereby establish a prima facie case. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Once the inference is created, the law is clear that the burden of production is placed on an employer to show a non-discriminatory reason. The plaintiff may then rely on his prima facie case or go further and attempt to show the defendant's reasons were pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); Wells v. Gotfredson Motor Co., Inc., 709 F.2d 493, 495 (8th Cir.1983).
 
 
 3
 In the present case, the trial court held that the extreme remedy of summary judgment was required. In doing so the judge should have viewed all of the facts in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from those facts. See supra note 3. We are convinced that he failed to do so. The trial court became persuaded that Hillebrand was discharged as part of a reduction in force by the employer. Having made that determination, the court then applied Holley and reasoned that Hillebrand lacked a showing of proof demonstrating that age was a factor in his termination.
 
 
 4
 Here Hillebrand urges that the proffered reason for his discharge, i.e. reduction in the work force, was itself pretextual. Thus, Hillebrand joined issue on the very facts that the trial court found to be the non-discriminatory reason for his discharge.[4] In proving a prima facie case, the plaintiff is not required to adopt as part of his case the reason given by the employer as to the discharge. After a full trial weighing the credibility of the witnesses, the fact finder, jury or judge, might find that the overall evidence supported the employer's case thereby negating the plaintiff's proof of discrimination. On the other hand, the plaintiff's proof may well convince the factfinder that the employer's reason was pretextual and that the plaintiff's prima facie proof sustained the case.
 
 
 5
 We now turn to the facts revealed by the various depositions and affidavits filed with the motion for summary judgment.
 
 Facts
 
 6
 M-Tron designs, manufactures, and distributes radio crystals. In recent years, it has also begun buying foreign-made crystals and distributing them in the United States. From 1977 to 1984, Delco Electronics was a major account of M-Tron. Because of problems in production and shipping, Delco had shown signs of dissatisfaction with its contract with M-Tron. On May 14, 1984, Kiousis, then president of M-Tron, wrote a memorandum discussing the effect of losing the Delco contract. At that time he noted that "[t]he forecast without Delco [was] higher than the original 1985 forecast which included Delco." From 1975 to 1984, Hillebrand was employed at M-Tron in various management and executive positions, including manufacturing manager, vice president-operations, and vice president-production. On May 16, 1984, notwithstanding the projected loss of the Delco contract, Hillebrand was reelected by M-Tron's board of directors as the vice president-operations. On May 29, 1984, Kiousis wrote Delco acknowledging the non-renewal of the Delco contract, but anticipating further Delco business. On June 5, 1984, Kiousis expressed optimism for M-Tron despite the loss of the contract. He projected the discharge of some indirect personnel but made no reference to top level management. In that same memorandum, Kiousis projected the need for additional personnel for clock production, engineering and new product development.
 
 
 7
 Kiousis wrote a letter terminating Hillebrand on June 8, 1984, and stated that he was being discharged due to the loss of the Delco contract. As vice president-operations, Hillebrand knew of no plans to fire or lay off anyone prior to that time. He stated that to his knowledge, no general reduction in force had been planned or implemented. M-Tron has maintained throughout that the loss of the contract so reduced its manufacturing demands that it could not justify an executive level manufacturing position. M-Tron also claims that during the past several years it has been in the process of phasing down its manufacturing capacities and turning more to importing crystals from Japanese manufacturers. There is no claim by M-Tron that Hillebrand was incompetent or unqualified. M-Tron also points out that some ninety other employees were laid off in the ten months following the loss of the Delco contract. It concedes that none were top executives such as Hillebrand, but states that some were managers and supervisors, and many were production and line personnel. No top administrative level employee other than Hillebrand, however, was discharged in 1984.
 
 
 8
 Hillebrand's proof presents a different view of M-Tron's decision to discharge him. He relies largely on the chronology of events leading up to the discharge to establish an inference of age discrimination. First, he claims that Kiousis and Rein, M-Tron's treasurer, were planning his discharge months before the Delco contract was cancelled and at a time when Delco's business with M-Tron was actually increasing. Hillebrand asserts that Rein, the company comptroller, initially brought up Hillebrand's "questionable usefulness" to the company in early 1983. It was Rein who assumed Hillebrand's responsibilities even though he had no previous training which would qualify him to do so. In September of 1982 Rein prepared a contingency plan to reduce costs should the then-existing downturn in the crystal market continue. In the memorandum of that plan, he called for the elimination of eight salaried personnel along with other cost-cutting measures. These positions were in fact not eliminated until nine months after Hillebrand's discharge. Hillebrand's position was not identified as one to be eliminated.
 
 
 9
 In late 1983 Kiousis outlined a general plan for reducing expenses in the event the Delco contract was lost. Eleven "indirect labor" positions were targeted for elimination, but none of the positions were named. Hillebrand received his termination notice in mid-June when he returned from vacation. He was given severance pay and vacation time and was offered an additional $5000 if he would sign a general release absolving M-Tron from any future liability.[5] He refused to sign. His duties were combined with Rein's, who was forty years old at the time.[6] Rein stated that he was not experienced in manufacturing or plant operations and that his expertise was in the financial area.
 
 
 10
 Hillebrand also points to a statement Kiousis made at an awards banquet, where he referred to Hillebrand as "a gray-haired old man," as further evidence that age was behind the decision to fire him. In addition he relies on an indirect statement made by Kiousis in his deposition that by January of 1984 Hillebrand had "outlived his usefulness."
 
 Discussion
 
 11
 Hillebrand maintains that this evidence viewed as a whole creates a prima facie inference that M-Tron's officials fired him because of his age. Hillebrand was sixty years old at the time of his discharge. M-Tron does not dispute that Hillebrand was in the protected age group, that he was qualified, that he was performing his job duties satisfactorily, that he was discharged, and that his duties were assumed by a younger man. The company claims, however, that the evidence fails to establish a question of material fact on the issue of whether age was a factor in the company's employment decision, a required element in an ADEA/reduction in force case under Holley. Hillebrand maintains that Holley does not apply in this case because there was no bona fide reduction in force at the company that would trigger Holley's more rigorous standards at the prima facie stage. The facts of this case parallel those found in Christie v. Foremost Ins. Co., 785 F.2d 584 (7th Cir.1986). A jury found that the defendant's proffered reason for firing the plaintiff was pretextual. The defendant contended that its nondiscriminatory reason for firing him was a cutback necessitated by an economic downturn. Christie claimed that the reason was pretextual because there was no bona fide reduction in force. The court addressed this attack on the genuineness of the employer's claimed reduction in force:
 
 
 12
 Christie also presented evidence from which the jury could have found that Foremost did not comply with its own reduction in force policy * * *.
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 * * * Foremost alleges that rather than producing evidence of pretext, Christie merely invited the jury to second-guess Foremost's business judgment. Foremost is correct that a plaintiff cannot argue that the defendant made a bad business decision in choosing between two employees to discharge. * * *
 
 
 16
 Christie's argument was different, however. He argued not that Foremost used the wrong criteria and bad judgment in terminating him as part of a reduction in force, but rather that Foremost never made a decision about who to terminate as part of a reduction in force. Christie argued that Foremost merely used the reduction-in-force rationale as a pretext to cover age discrimination. A plaintiff cannot argue that the defendant showed bad judgment in deciding another employee had greater potential, but he can argue that the method used by the defendant showed that the defendant was not really trying to decide which employee had greater potential. Granted this is a fine line, but the law often places such a burden on the jury.
 
 
 17
 Id. at 587 (emphasis added).
 
 
 18
 Christie is distinguishable, of course, because the prima facie case was not at issue. The claimed reduction in force in the instant case undoubtedly will be a recurring issue at trial. M-Tron will continue to assert that the reduction in force was the legitimate reason for firing Hillebrand, and Hillebrand will try to show that the reduction in force, and therefore the legitimate business reason, was pretextual. Our holding that the evidence adduced thus far tends to disprove the existence of a genuine reduction in force goes only to the issue of the proper analytical framework of a prima facie case. The case has progressed only to the point of the defendant's motion for summary judgment. It is likely that both parties will produce additional evidence at trial in support of their respective claims. Our opinion should not be read as deciding the ultimate issue of pretext, for it does not.
 
 
 19
 Most cases simply assume that a reduction in force has occurred and analyze the evidence within that framework. Cf. Holley, supra, 771 F.2d 1161. When this occurs, the evidence generally demonstrates that the company had some kind of plan to reduce expenses by eliminating jobs. These plans generally include objective criteria by which to determine which jobs will be eliminated and often include objective evidence of a business decline. See, e.g., Nolting v. Yellow Freight Sys., Inc., 799 F.2d 1192, 1194 (8th Cir.1986) (disparate impact ADEA case involving nationwide reduction in force); Holt v. Gamewell Corp., 797 F.2d 36, 37 (1st Cir.1986) (three years of net operating losses); Fink v. Western Elec. Co., 708 F.2d 909, 911 (4th Cir.1983) (entire unit eliminated after government contract cancelled). Often a company will factor into its reduction in force plan the effect of layoffs on protected groups. See EEOC v. Sandia Corp., 639 F.2d 600, 603 (10th Cir.1980) (plan examined and approved by Department of Labor and EEOC). As part of this objective approach, some companies use committees to make the final decision on who will lose their jobs. Fink v. Western Elec. Co., 708 F.2d at 909-10; EEOC v. Sandia, 639 F.2d at 604. Apparently this is done to insulate employees from possible biases or prejudices of immediate supervisors and to protect the employer in any subsequent discrimination lawsuits.
 
 
 20
 There exists little evidence of M-Tron's objective plan to reduce expenses at the time of Hillebrand's discharge, nor is there much evidence of a genuine business decline. Kiousis' and Rein's contingency plans neither identified the targeted positions nor described an objective plan. Further, Kiousis' memorandum of May 14 forecasted a better profit picture without the Delco contract than with it, evidence that militates against M-Tron's claim of a genuine business decline. Additionally, Kiousis' June 5 memorandum discussing the termination of nine indirect employees and the anticipated personnel buildup in clock production, engineering, and new product development, suggests that the company was not in the dire economic straits it now alleges. It also seems unusual that the vice president-operations would not know of a planned reduction in force. Apparently only Kiousis and Rein knew of the alleged reduction in force at the time Kiousis fired Hillebrand. When viewed as a whole, the record supports Hillebrand's claim that there was no genuine reduction in force that would trigger the more exacting standards of Holley in order to overcome a motion for summary judgment. The district court's reliance on Holley, therefore, was erroneous.
 
 
 21
 We have previously held that the prima facie formula first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is not exclusive and its application will vary in different fact situations. Legrand v. Trustees of University of Ark., 821 F.2d 478, 480 (8th Cir.1987) (Title VII); Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1269 (8th Cir.1987) (ADEA). The particular allegations and facts in a case will determine the appropriate legal framework at the prima facie stage. The significance of the prima facie showing is the inference it creates that the plaintiff was discharged for a discriminatory reason.
 
 
 22
 We conclude that, as a matter of law, Hillebrand has established a prima facie case of age discrimination. The cause is remanded to the district court for a plenary trial on the ADEA count.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 In Holley we held that in an ADEA case involving a "reduction in force" a plaintiff must show at the prima facie stage, in addition to the facts, that he was in the protected age group, that he was qualified, that he was discharged, and that age was a factor in the employer's decision. 771 F.2d at 1165-66
 
 
 [2]
 In the state claims, Hillebrand pled that he was an at-will employee and therefore could not be discharged without cause. He claimed that the South Dakota statute imposed on employers a standard of good faith dealing. S.D. Codified Laws Ann. ch. 60-1. He asserts his proof establishes a breach of good faith. We have recently held that our interpretation of South Dakota law does not recognize a private cause of action under this statute. See Cambee's Furniture, Inc. v. Doughboy Recreational, Inc., 825 F.2d 167 (8th Cir.1987). He pled alternatively that if he were not an employee at-will, he still has another state claim. That second claim was premised on the allegation that Hillebrand was not an at-will employee, even though he had signed an agreement with M-Tron stating that he was an at-will employee, hired for no specific term. His claim as one other than an employee at-will cannot be sustained
 
 
 [3]
 Holley itself exalted this rule. In that case we said:
 We may find for Sanyo only if "all the evidence points one way and is susceptible of no reasonable inferences sustaining the position" of Holley. Further, we must assume as true all facts in Holley's favor which the evidence tends to prove and give him the benefit of all reasonable inferences. The task before us is, bearing in mind this standard, to adduce the nature of proof required under the ADEA and to evaluate the evidence Holley presented at trial against such requirements.
 Holley, supra, 771 F.2d at 1164 (citations omitted).
 
 
 [4]
 In Holley the existence of a reduction in force was unquestionably established: More than fifty percent of the employees were laid off, including one-fourth of the salaried employees in Holley's department. Holley, supra, 771 F.2d at 1163
 
 
 [5]
 A general release of a Title VII or ADEA claim does not ordinarily violate public policy and is enforceable absent force, fraud, or undue influence. Pilon v. University of Minn., 710 F.2d 466, 468 (8th Cir.1983); see also Sherrod v. Sears, Roebuck & Co., 785 F.2d 1312, 1315 n. 8 (5th Cir.1986)
 
 
 [6]
 The ADEA protects individuals who are at least forty but less than seventy years of age. 29 U.S.C. Sec. 631(a) (1982). Rein, therefore, was also in the protected age group. A plaintiff need not be replaced by a person outside the protected age group to make out a prima facie case under the ADEA; the plaintiff need only be replaced by a younger person. See, e.g., Thornbrough v. Columbus and Greenville R.R. Co., 760 F.2d 633, 643 n. 14 (5th Cir.1985); Pace v. Southern Ry. Sys., 701 F.2d 1383, 1386-87 (11th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)