George BASHARA, Appellant,

v.

BLACK HILLS CORPORATION, Appellee.

No. 93–2362.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1994.

Decided June 9, 1994.

Stephanie Pochop, Gregory, SD (argued), for appellant.

John K. Nooney, Rapid City, SD (argued), for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

George Bashara brought this action against Black Hills Corporation ("Black Hills"), alleging that he had been terminated on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Following extensive discovery, Black Hills moved for summary judgment. The district court[1] found that Bashara had been terminated as part of a legitimate reduction in force and that Bashara therefore had to show, as part of his prima facie case, that age was a factor in his termination. Finding no evidence that age had played a role in Bashara's discharge, the court granted summary judgment for Black Hills. We affirm.

## I.

During the 1980s, Black Hills, a public utility, acquired several subsidiary companies. In the late 1980s, however, Black Hills sold most of its subsidiaries, reducing its work force from approximately 750 employees to 450. When Daniel Landguth became Black Hills' chief executive officer in January 1991, he continued to downsize the company and also began to restructure it. For example, he eliminated two officer positions and cancelled a number of proposed projects. He also implemented a cost-cutting plan that,

among other things, eliminated fifteen administrative staff positions from three departments that had grown extensively during the company's expansion. In particular, the plan called for eliminating one or two positions in the General Services Department, three positions in the Human Resources Department, and eleven positions in the Information Services Department.

Landguth announced the work-force reduction to the employees in the three affected departments by a letter dated February 4, 1991, which read, in pertinent part, as follows:

Due to the change in the strategic direction of the Company ..., the management of Black Hills Corporation has determined that changes in [General Services, Human Resources, and Information Services] must be made.

We find it necessary to reduce the number of support staff positions by approximately 15 positions over the next several weeks. Prior to initiating involuntary reductions in the workforce, we will offer a voluntary separation package to those employees who, for whatever reason, desire to end their employment relationship with Black Hills Corporation....

Involuntary separations, if any (because there were insufficient voluntary separations), will be addressed in accordance with existing separation guidelines. Obviously, we will realign each department's workforce before we finalize any necessary involuntary separations.

... Acceptance of [requests for voluntary separation] is at the discretion of the Company, and management reserves the right to limit the number of participants in any job category.

It is with much regret that we must reduce staff, however, we must continue to be aware of and respond to the present and continuing business needs of the Company.

Attached to Landguth's letter was a chart indicating the number of positions to be eliminated from each department.

1. The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota.

The targeted positions in General Services and Information Services were eliminated either by not filling vacant positions or through voluntary separations. Indeed, Black Hills had to reject some requests for voluntary separation from employees in these two departments. In Human Resources, on the other hand, one employee requested voluntary separation and one position was eliminated by not filling an open position, leaving one position to be eliminated through involuntary termination. Jim Mattern, Director of Human Resources, analyzed what each of his employees did, could do, and wanted to do. Based upon what he believed was best for his department and the company, Mattern decided to terminate Bashara, who was manager of insurance and benefits. At the time, Bashara was fifty-six years old. Bashara's responsibilities were reassigned to a number of individuals, with most of his duties being allocated to a thirty-seven-year-old employee.

## II.

■ We will affirm the grant of a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993).

■ The ADEA forbids an employer from discharging an employee within the age-protected group (40 and over) because of the employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). If the plaintiff presents no direct evidence of age discrimination, the Title VII burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is followed. *See, e.g., Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1164 (8th Cir.1985). Under the *McDonnell Douglas* three-step framework, the plaintiff has the initial burden of establishing a prima facie case. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. If the plaintiff makes a prima facie showing, thus raising an inference of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the

plaintiff's discharge. *Id.* If the defendant meets this burden, the plaintiff must prove that the defendant's reason is merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

■ In circumstances not involving a reduction in force, a plaintiff may make a prima facie case of age discrimination by establishing (1) that he is within the protected age group; (2) that he met applicable job qualifications; (3) that he was discharged; and (4) that, after his discharge, the position remained open and the employer sought applicants with similar qualifications to fill the position. *See, e.g., Holley,* 771 F.2d at 1165. In the context of a reduction in force, however, the fourth requirement creates difficulties. The plaintiff's position does not remain open; rather, it is eliminated or combined with another position. *Id.* Accordingly, in *Holley,* we held that to establish a prima facie case in a reduction-of-force situation, the plaintiff must meet the first three requirements and " 'must come forward with additional ... evidence that age was a factor in his termination.' " *Id.* at 1166 (quoting *LaGrant v. Gulf & Western Mfg. Co.,* 748 F.2d 1087, 1091 (6th Cir.1984)).

■ If the plaintiff offers direct evidence of age discrimination, however, the *McDonnell Douglas* analysis is inapplicable. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). That is, when direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary. *Adams v. Nolan,* 962 F.2d 791, 795 n. 6 (8th Cir.1992) (citing *Thurston,* 469 U.S. at 121, 105 S.Ct. at 621); *Holley,* 771 F.2d at 1165 n. 7 (same); *Perry v. Kunz,* 878 F.2d 1056, 1059 (8th Cir.1989).

■ Bashara argues that the record contains direct evidence of age discrimination and that the district court therefore erred in requiring him to establish a prima facie case. Viewed in the light most favorable to Bashara, the record reveals that when Mattern informed Bashara that he would probably be terminated, Bashara stated that he believed that his termination would violate the ADEA

and asked Mattern to investigate the issue. Mattern agreed to do so. After speaking with legal counsel, Mattern told Bashara that he was concerned that Bashara's termination might violate the ADEA but that counsel had ultimately assured him that it would not.[2] Bashara contends that this statement by Mattern is direct evidence of age discrimination.

We disagree, for Mattern's expression of concern over a possible age discrimination claim can only be reasonably read as a nonincriminatory response to Bashara's request that Mattern investigate the possibility that such a claim might validly exist. It would be a foolhardy supervisor indeed who, however well-documented and irrefutably established a termination decision might be, would not have some concern over possible litigation arising out of the termination of an age-protected employee. An expression of concern in these circumstances should not be equated with an admission of age-related animus on the part of Black Hills, but rather should be regarded as a natural reaction to the ever-present threat of litigation attendant upon terminating an age-protected employee. To elevate Mattern's response to Bashara's statements and request for investigation would be to place an unwarranted gloss of self-incrimination upon an innocent, well-meaning remark. We view Mattern's response as the functional equivalent of a stray remark that we have said does not constitute evidence of discriminatory animus. *See Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir.1993); *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir.1991).

■ Because Bashara has presented no direct evidence of discrimination, we look to the *McDonnell Douglas* analysis. The first three elements of the prima facie case under *McDonnell Douglas* are not in dispute. The dispute concerns *Holley*'s requirement that in a reduction-in-force case the plaintiff must present evidence that age was a factor in his discharge. *Holley*, 771 F.2d at 1166. Relying on *Hillebrand v. M–Tron Industries, Inc.*, 827 F.2d 363 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989), Bashara argues that he need not meet *Holley*'s additional showing.

In *Hillebrand*, the district court granted summary judgment for M–Tron on the ground that Hillebrand had not made a prima facie case under *Holley*. *Id.* at 364. We noted that in most reduction-in-force cases "the evidence generally demonstrates that the company had some kind of plan to reduce expenses by eliminating jobs. These plans generally include objective criteria by which to determine which jobs will be eliminated and often include objective evidence of a business decline." *Id.* at 367. Finding little evidence in the record of an objective plan to eliminate jobs or of a genuine decline in business, we held that the evidence supported Hillebrand's claim that no genuine reduction in force existed and therefore found *Holley*'s standard inapplicable. *Id.* at 368.

Bashara argues that because Black Hills did not use objective criteria in determining which employee to involuntarily terminate and because Black Hills presented no evidence of a business decline, there is a question of fact as to whether a genuine reduction in force occurred.

We disagree, for in this case, unlike in *Hillebrand*, the record contains substantial, uncontradicted evidence of a bona fide reduction in force. The record establishes that Landguth instituted an overall program to downsize and restructure the company. We know of no requirement, and Bashara acknowledges that there is none, that a business must first founder on economic shoals before embarking upon such a plan. As part of this program, Black Hills implemented a cost-cutting plan that included a reduction in force. Landguth's February 4 letter clearly outlined a plan to eliminate fifteen support staff positions. An attachment to the letter

---

**2.** We note that during his deposition Bashara testified that it was Mattern who raised the issue of age discrimination. The following morning, however, Bashara left a message on defense counsel's answering machine stating that he wanted to clarify his testimony by making sure that it was understood that it was not Mattern who had raised the question of age discrimination and that Mattern had merely followed through on Bashara's request that he investigate the issue.

specifically set out the predetermined number of positions that would be eliminated in each of the three affected departments. The plan attempted to reduce the work force in an objective manner by using voluntary separations to the extent possible. Even when subjected to the most critical examination, then, *see MacDissi v. Valmont Indus., Inc.,* 856 F.2d 1054, 1059 n. 4 (8th Cir.1988), we conclude that Black Hills' rationale for reducing its workforce bears all the hallmarks of a bona fide reduction in force made necessary by the exercise of its business judgment (which is not a proper subject for judicial oversight, *see Holley,* 771 F.2d at 1166 n. 8) to reduce the scope of its operations and raises no genuine issue of fact on the question of pretext.

■ Accordingly, we find that *Holley* is applicable in this case. To survive a summary judgment motion under *Holley,* a plaintiff needs "to present evidence sufficient to raise a genuine issue as to whether age was a factor" in the defendant's decision to terminate the plaintiff. *Kypke v. Burlington N. R.R. Co.,* 928 F.2d 285, 287 (8th Cir.1991) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). The plaintiff's evidence may take many forms. *Holley,* 771 F.2d at 1166. As we have already discussed, if the plaintiff presents direct evidence of age discrimination, the burden-shifting analysis is simply unnecessary. *Id.* The plaintiff may also satisfy this requirement through circumstantial or statistical evidence. *Id.* Cursory and conclusory allegations, however, are insufficient. *Kypke,* 928 F.2d at 287.

■ To meet the *Holley* standard, Bashara again argues that Mattern's statement that he was concerned that Bashara's discharge might violate the ADEA demonstrates that age was a factor in the discharge. We disagree, for just as Mattern's statement is not direct evidence of age discrimination, neither does it constitute circumstantial evidence of discriminatory intent.

■ Bashara next argues that the reduction-in-force plan called for involuntary terminations only if fewer than fifteen employees requested voluntary separations. He contends that Black Hills breached the plan by terminating him after it had rejected requests for voluntary separation from other employees and that its breach is circumstantial evidence of age discrimination. We find this argument unpersuasive, for the plan clearly called for the Human Resources Department to be reduced by three positions. None of the employees denied voluntary separation was in Human Resources. Moreover, as outlined in Landguth's letter, acceptance of requests for voluntary separation was "at the discretion of the Company, and management reserve[d] the right to limit the number of participants in any job category." Clearly, then, Black Hills acted in accordance with its reduction-in-force plan by involuntarily terminating Bashara instead of accepting a request for a voluntary separation from an employee in General Services or Information Services.

■ Last, Bashara argues that Black Hills' failure to use objective criteria in deciding which employee to terminate is circumstantial evidence of discrimination sufficient to defeat a motion for summary judgment. It is true that reduction-in-force plans may generally include objective criteria by which to determine the positions to be eliminated, just as such plans often include evidence of a business decline, *see Hillebrand,* 827 F.2d at 367. Nevertheless, we do not view the absence of such objective criteria as probative evidence of discriminatory animus when the evidence of a bona fide reduction-in-force plan is so substantial as that in the present case. We have examined Mattern's explanation of his decision-making process and have found no suggestion that age played a role in his decision. Accordingly, we agree with the district court that no reasonable juror could have found that Bashara had met the burden of proof imposed upon him by *Holley.* *See Kypke,* 928 F.2d at 288.

The judgment is affirmed.