# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-2418

———————

Epifania Herrero,                    *
                                     *
          Appellant,                 *
                                     *     Appeal from the United States
     v.                              *     District Court for the
                                     *     Eastern District of Missouri.
St. Louis University Hospital;       *
Greg Ruppel; Allen Hibbett,          *
also known as Allen Hibbegg,         *
                                     *
          Appellees.                 *

———————

Submitted: January 13, 1997

Filed: March 26, 1997

———————

Before WOLLMAN and HANSEN, Circuit Judges, and MONTGOMERY,[1]
      District Judge.

———————

WOLLMAN, Circuit Judge.

Epifania Herrero appeals from the district court's[2] order granting defendants' motion for summary judgment on her age, race, and ethnic origin discrimination claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.; the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et

_____

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

seq.; the Civil Rights Act of 1866 (Section 1981), 42 U.S.C. § 1981; and the Missouri Human Rights Act (MHRA), Mo. Stat. Ann. § 213.010 et seq. (Vernon's 1996). We affirm.

## I.

Herrero, a woman of Filipino origin, was employed in the pulmonary function laboratory (the lab) at St. Louis University Hospital (SLUH) from 1969 until she was terminated in 1994 at age sixty. Herrero had been promoted to the position of "pulmonary lab technician" in 1979. In February of 1984, Herrero's title was changed to "blood gas technician." This title change did not alter Herrero's salary or job duties, but she considered it a demotion and refused to sign a change-in-status form. On April 25, 1991, Herrero's title was again changed, this time to "pulmonary function assistant." As before, Herrero refused to sign a change-in-status form, believing the change in title a demotion. Herrero filed a complaint with the Equal Employment Opportunity Commission (EEOC) on November 2, 1993, alleging discrimination due to her age, race, and national origin, citing the 1984 and 1991 "demotions" in support of her allegations and alleging disparate treatment and working conditions between herself and other workers.

In April of 1994, SLUH instituted a reduction-in-force (RIF). The RIF implementation policy provided that layoffs would be determined on the basis of job classification, employment status, prior job experience, seniority, and licensure and/or certification. Sanford Deitch, Assistant Administrator--Hospital Services Administration, and David Miller, Director of Affirmative Action for St. Louis University, stated by affidavit that Herrero's termination was based solely on her job classification. Hospital administrators decided to transfer all blood gas testing from the

-2-

lab to the clinical chemistry laboratory and to terminate all blood gas technician and pulmonary function assistant positions, which the transfer rendered superfluous. Accordingly, three blood gas technicians (two blacks and one Asian) and Herrero were terminated, and one blood gas technician (Asian) was transferred to the pharmacy department. Lab director Gregg Ruppel, assistant director Alan Hibbett, pulmonary function technologist Sue Borosh, and department secretary Kate Spellman-Hahn (all white), were retained.

Herrero filed a charge with the EEOC on June 17, 1994, alleging that her termination was due to discrimination. She filed suit in the district court, alleging that defendants SLUH, Ruppel, and Hibbett violated the ADEA, Title VII, Section 1981, and the MHRA by terminating Herrero in 1994 and that defendants SLUH and Ruppel violated these acts by "demoting" her in 1984. In a most thorough opinion, which we could well adopt as our own, the district court granted defendants' motion for summary judgment, finding that Herrero had failed to prove that her 1994 termination was due to her age, race, or ethnic origin, that Herrero's claim regarding her 1984 demotion was untimely filed, that her claims for intentional infliction of emotional distress and tortious interference with contract were baseless, and that defendants were entitled to costs. Herrero argues that these findings are erroneous.[3]

_____

[3]The court summarily dismissed Herrero's ADEA, Title VII, Section 1981, and MHRA charges against Ruppel and Hibbett individually. See Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377, 381 (8th Cir. 1995) (employees not liable under Title VII in their individual capacities). Herrero does not contest this ruling on appeal. Likewise, she does not contest the district court's dismissal of her tortious interference with contract claim.

We will affirm a grant of a summary judgment motion if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See <u>Bashara v. Black Hills Corp.</u>, 26 F.3d 820, 823 (8th Cir. 1994).

To establish a prima facie case of discrimination in the RIF context under Title VII, the ADEA, Section 1981, or the MHRA, Herrero must: (1) show that she was within the protected age, racial, or ethnic group; (2) show that she met applicable job qualifications; (3) show that she was discharged; and (4) produce some additional evidence that a prohibited criterion such as age, race, or ethnic origin was a factor in her termination.  See <u>Bashara</u>, 26 F.3d at 823 (citing <u>Holley v. Sanyo Mfg., Inc.</u>, 771 F.2d 1161, 1165 (8th Cir. 1985)) (fourth element of traditional <u>McDonnell Douglas</u>[4] Title VII analysis must be adapted for RIF claims, and analysis applies to ADEA claims); <u>Roxas v. Presentation College</u>, 90 F.3d 310, 315 (8th Cir. 1996) (Title VII analysis applies to claims under Section 1981); <u>Hossaini v. Western Mo. Med. Ctr.</u>, 97 F.3d 1085, 1088 (8th Cir. 1996) (Title VII analysis applies to claims under MHRA).  The district court found that Herrero failed to establish the fourth requirement.  We agree.

Herrero argues that certain remarks by Ruppel, Hibbett, and Borosh regarding age and ethnic origin are evidence that her termination was motivated by discrimination.  Statements may constitute evidence of impermissible motive only when they are made by decisionmakers in the termination process and reflect a discriminatory animus such that a jury could infer it was a

---

[4]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

motivating factor in the termination process.  See <u>Aucutt v. Six Flags Over Mid-America, Inc.</u>, 85 F.3d 1311, 1315-16 (8th Cir. 1996).  Deitch averred that upper level Hospital and University administrators, not employees in the lab, made all final termination decisions.  Miller attested that he "personally reviewed Mrs. Herrero's layoff, as well as many others, to ensure that they were not influenced by impermissible factors."  Ruppel stated that the personnel department, not he, determined who would be laid off and that his only contribution was information relating to work performance, such as excessive absenteeism.  We agree with the district court that the evidence simply does not show that Ruppel, Hibbett, or Borosh had any influence in, or that their comments had any effect on, SLUH's decision to terminate Herrero, and thus their comments cannot constitute evidence of discriminatory motive.

We have also considered Herrero's account of poor treatment she received from other employees and the numerous aspects of her employment in the lab.  Even assuming that her allegations are true,  they fail to raise a genuine issue of material fact regarding SLUH's motivation behind its termination of Herrero, for there is no evidence indicating that this treatment by co-employees was related to SLUH's decisionmaking process. <u>See</u> <u>Kehoe v. Anheuser-Busch, Inc.</u>, 96 F.3d 1095, 1105-06 (8th Cir. 1996) (plaintiff must show causal connection between disparate treatment and adverse employment action).

Herrero also argues that factors relating to the RIF implementation reveal that SLUH's decision to terminate her was motivated by discrimination.  She first contends that SLUH lacked adequate criteria for determining who would be terminated.  She points to the fact that an internal cover memorandum addressed to a hospital vice-president, accompanying a draft of the RIF

implementation policy, was dated May 12, 1994, whereas the list of employees to be terminated was compiled before that date, on April 27, 1994. We find this argument unpersuasive, for uncontradicted evidence confirms that Herrero was terminated pursuant to a comprehensive, neutral program motivated by SLUH's exercise of its business judgment, designed to streamline operations at SLUH. The letter informing Herrero of her termination stated that SLUH "faced, and will continue to experience, continued pressure on [its] operating budgets and competition from other providers," and that SLUH "ha[d] no choice but to reduce staff in certain areas." Herrero does not dispute that SLUH faced budget demands. Herrero's attorney conceded at oral argument that a reduction in force was required at SLUH. Furthermore, Deitch and Miller testified that SLUH implemented a neutral and systematic approach to the termination decisions and that Herrero's termination was due solely to the elimination of her position. Herrero does not adduce any facts discrediting this evidence. We conclude that SLUH's termination activities bear all the indicia of a bona fide RIF and raise no genuine issue of fact regarding SLUH's motivation for Herrero's termination. Cf. Bashara, 26 F.3d at 824-25 (substantial and uncontradicted evidence of bona fide RIF rebuts argument that employer lacked objective criteria and shows that employer's termination of employee is not pretextual).

Herrero contends, in support of her discrimination claims, that SLUH could have saved money by terminating higher paid employees rather than her. We decline Herrero's invitation to review SLUH's decision for general fairness and economic coherence. "[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgment made by employers, except to the extent that those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63

F.3d 771, 781 (8th Cir. 1995). Herrero's economic analysis, even if correct, does not constitute cognizable evidence of discrimination.

Nor do we accept Herrero's assertion that the elimination of blood gas testing from the lab was an elaborate "ruse" to "get rid of" her. As stated above, a bona fide RIF was in effect at SLUH. Miller stated that the position of pulmonary function technologist was retained, while blood gas technicians and pulmonary function assistants were eliminated, because a pulmonary function technologist "could perform more advanced pulmonary testing, and more comprehensively interpret results, than a person in a lower classification." He also averred that a personnel department employee determined that classifying Herrero as a pulmonary function technologist "was not appropriate due to her lack of certification and comprehensive knowledge." Herrero concedes that she could not perform all the functions of a pulmonary function technologist and that she had been offered the opportunity to take the national certification test but declined. SLUH had no obligation to promote Herrero to a position for which she was not qualified. We see nothing in the record to indicate that Herrero's termination was attributable any cause other than the legitimate elimination of her position.

Herrero also points to the fact that all employees terminated from the lab were non-white and all retained employees were white. Herrero does not dispute, however, that all non-white employees in the lab were blood gas technicians or pulmonary function assistants and that the white employees were directors, pulmonary function technologists, or secretaries. Because the white employees were not similarly situated to the non-white employees, a comparison between the white and non-white employees is not credible evidence that could raise a genuine issue of fact regarding SLUH's

motivation for terminating Herrero.  See Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 252 (8th Cir. 1995) (comparison to other employees is valid only if employees are similarly situated to plaintiff); Lidge-Myrtil v. Deere & Co., 49 F.3d 1308, 1311 (8th Cir. 1995) (disparate treatment of dissimilarly situated employees does not show that employer's explanation for termination is pretextual).

Herrero additionally asserts that she was terminated in retaliation for filing an EEOC complaint in 1993.  To establish a prima facie case of retaliation, Herrero must show that she participated in statutorily-protected activity, that SLUH took adverse employment action against her, and that a connection exists between the two.  See West v. Marion Merrell Dow, Inc., 54 F.3d 493, 496-97 (8th Cir. 1995).  The district court found that Herrero failed to show a connection between her protected activities and her termination.  We agree.  The only evidence Herrero offers in support of her retaliation claim is the affidavit of T. Hensley Williams, the Director of Human Resources for the Iowa Board of Regents.  Williams' affidavit provides no support for Herrero's claim.  He merely states in a general and conclusory fashion that he has "seen [employers whose employee has filed an EEO suit] utilize the RIF to lay-off troublesome employees under the guise of a layoff," and that it "appear[ed] to [him] that this may be the situation in the instant case."  Such "[c]onclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment."  Jackson v. Anchor Packing Co., 994 F.2d 1295, 1304 (8th Cir. 1993); see Fed. R. Civ. P. 56(e).

In sum, we are satisfied that the evidence in the record raises no genuine issue of material fact on the question of SLUH's motivation behind Herrero's termination, establishes that SLUH's termination of Herrero was due solely to a legitimate reduction in

force, and shows that SLUH is entitled to judgment as a matter of law.

## III.

The district court held that Herrero's alleged demotion in 1984 was time-barred. See 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); Mo. Stat. Ann. §§ 213.075(1) & 213.111(1) (Vernon's 1996). Herrero argues that the 1984 demotion generated a continuing violation that tolled the statutory filing deadlines. Our decisions make clear, however, that an isolated event, even one with continuing impact, does not constitute a continuing violation. See Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 167 (8th Cir. 1995) (en banc); Chaffin v. Rheem Mfg. Co., 904 F.2d 1269, 1271-72 (8th Cir. 1990). Herrero fails to offer any evidence showing that her demotion was anything other than an isolated event. Thus, the district court correctly found that this claim is time-barred.

## IV.

Herrero asserts that the district court erred in finding that she failed to make a prima facie case of internal infliction of emotional distress against Ruppel and Hibbett. We agree with the district court, however, that the record is devoid of any intentional extreme and outrageous conduct of Hibbett or Ruppel that caused Herrero severe emotional distress, and her claim must perforce fail. See K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. 1996) (en banc).

## V.

As Herrero concedes, because defendants are the prevailing party the district court did not err in awarding them costs.  <u>See</u> 28 U.S.C. § 1920; 42 U.S.C. § 2000e-5(k).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-