Dennis E. KRAUSE, Plaintiff,

v.

BOBCAT COMPANY, a subsidiary of Ingersoll–Rand Company Limited, a Bermuda company, Defendant.

Civil No. A3–02–43.

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 10, 2003.

Patricia R. Monson, Jacqueline S. Anderson, Nilles, Hansen & Davies, Ltd., Fargo, ND, for plaintiff.

Lisa K. Edison–Smith, Vogel Law Firm, Fargo, ND, Nina G. Stillman, James E. Bayles, Jr., Thomas G. Abram, Vedder Price Kaufman & Kammholz, Chicago, IL, Leslie Bakken Oliver, Vogel Law Firm, Bismarck, ND, for defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RALPH R. ERICKSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (doc. # 37). Plaintiff filed a brief in opposition (doc. # 48). Defendant filed a reply brief (doc. # 56).

### SUMMARY OF HOLDING

A plaintiff may prove age discrimination under either a disparate impact or disparate treatment theory pursuant to the Age Discrimination in Employment Act ("ADEA") or the North Dakota Human Rights Act ("NDHRA"). Under the disparate impact approach, Plaintiff has identified the company-wide reduction-in-force ("RIF") or the elimination of the Internal Consulting Group ("ICG") as facially neutral business practices. Plaintiff has also presented sufficient statistical data demonstrating that these practices disparately impacted people age forty or older. The difference in results between each side's experts relates to factual disputes over which population to include in the analysis. Under the disparate treatment approach,

Plaintiff has provided sufficient evidence to create a prima facie case. Since fact questions exist, Defendant's Motion for Summary Judgment on the ADEA and NDHRA claims is denied.

Under the retaliation claim, a plaintiff must demonstrate that he engaged in protected conduct that resulted in an adverse employment decision. Defendant argues that Plaintiff was never given another job at Bobcat because he never applied. Plaintiff alleges that he was told that applying for another job would be futile. Whether it would be futile is a question of fact, so summary judgment on this claim is denied.

On an intentional infliction of emotional distress claim, the Court decides in the first instance whether the alleged conduct is extreme and outrageous. Terminating someone and giving them allegedly false reasons for that termination is not extreme conduct that goes beyond all possible bounds of decency. Defendant's Motion for Summary Judgment on this claim is granted.

## BACKGROUND

In November 2000, the defendant, Bobcat Company, started an RIF. It alleges that it had a goal of reducing the total workforce by 25 to 30 employees. Defendant offered an early retirement program, and it alleges that 13 employees volunteered for that program. Defendant also alleges that five other employees were terminated for performance reasons, but Defendant alleges that it considered them as part of the company-wide RIF. Defendant alleges that by late January or early February 2001 the RIF was complete.

The plaintiff, Dennis Krause, was fifty-two in April 2001 when Defendant terminated his employment. At that time, Plaintiff was working in a department called the Internal Consulting Group ("ICG"). Plaintiff alleges that his termination was part of the company-wide RIF. Defendant alleges that the decision to eliminate the ICG was separate from the company-wide RIF.

Excluding the five people terminated for performance reasons, all of the people terminated as part of the company-wide RIF were older than forty. All of the people terminated in the ICG were older than forty. Defendant retained the two youngest members of the ICG and gave them other jobs within the company.

## ANALYSIS

■ Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists. *Mems v. City of St. Paul*, 224 F.3d 735, 738 (8th Cir.2000). The moving party bears the burden of proving that there is no genuine issue of material fact. *Id.* Summary judgment should rarely be granted in employment cases because employment claims are inherently fact based. *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir.1999) (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998)). Only if the evidence could not support any reasonable inference of discrimination may summary judgment be granted. *Id.* (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999)).

### I. ADEA

The ADEA makes it unlawful "for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* (quoting 29 U.S.C. § 623(a)(1)(1998). The ADEA applies to individuals age forty and older. *Id.* (citing 29 U.S.C. § 631)). A plaintiff may establish age discrimination under either a disparate impact or

disparate treatment theory. *Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 953 (8th Cir.2001).[1]

### A. Disparate Impact

██ Under a disparate impact approach, the plaintiff does not need to prove intentional discrimination. *Id.* (citing *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). "To establish a prima facie case for disparate impact, the plaintiff must show: (1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *Mems,* 224 F.3d at 740 (citing *Watson,* 487 U.S. at 994, 108 S.Ct. 2777). If the plaintiff makes this initial showing, then the burden shifts to the employer to produce evidence demonstrating a legitimate business reason for the challenged practice. *Evers,* 241 F.3d at 953. If the employer successfully establishes a business justification, the plaintiff may still prevail by demonstrating that a comparably effective alternative practice would produce a significantly smaller adverse impact on the protected class. *Id.* at 953–54; see also *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 658, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

Plaintiff identifies the company-wide reduction in force as the facially neutral personnel policy or practice. If the elimination of the ICG was a separate decision from the reduction in force, then that would be a second identified facially neutral personnel policy or practice. Plaintiff has satisfied the first prong of a prima facie case. See *Mems,* 224 F.3d at 740

(stating that the plaintiff must show an identifiable, facially neutral personnel policy or practice).

██ To demonstrate that this personnel policy or practice caused a disparate impact, which is the second and third prongs of the prima facie case, the plaintiff must present sufficient statistical evidence. *Watson,* 487 U.S. at 994, 108 S.Ct. 2777. The United States Supreme Court does not require a specific mathematical formula for this statistical data. *Id.* at 994–95, 108 S.Ct. 2777. Regardless of the kind of data presented, the statistical disparities must be sufficiently substantial to raise an inference that the personnel decision caused the disparate impact on the protected class. *Id.* at 995, 108 S.Ct. 2777.

██ When analyzing the resulting statistical data, courts generally consider a two standard deviation between the expected result and the obtained result to be sufficient to warrant an inference of discrimination. *Smith v. Xerox Corp.,* 196 F.3d 358, 366 (2d Cir.1999). However, the significance or substantiality of a numerical disparity should be determined on a case-by-case approach. *Watson,* 487 U.S. at 995 n. 3, 108 S.Ct. 2777.

In this case, the parties' experts reach different conclusions about whether there is a statistical significance in the termination rates between workers older than forty and younger than forty. The reason for this difference is that the experts use different populations for their analysis. Defendant's expert, George Neumann, includes employees who were terminated for performance reasons[2] while Plaintiff's expert, David Hirschey, does not.

---

1. The Court applies the same analysis to Plaintiff's age discrimination claims under the ADEA and under the North Dakota Human Rights Act. See *Schweigert v. Provident Life Ins. Co.,* 503 N.W.2d 225, 227 (N.D.1993) (stating that North Dakota relies on federal

discrimination law to interpret the North Dakota Human Rights Act when it is helpful and sensible to do so).

2. All of the employees terminated for performance reasons were under the age of forty.

■ Whether an employee is included in an RIF is a question of fact. *Hogan v. Gen. Elec. Co.,* 109 F.Supp.2d 99, 103 (N.D.N.Y.2000). Therefore, it is for a jury to decide which expert included the correct population in his analysis. Viewing the evidence in the light most favorable to Plaintiff, the Court must assume that his expert analyzed the correct population. Under Hirschey's analysis, there is a statistically significant difference between the termination rates for employees older than forty and employees younger than forty. All of the employees terminated during the company-wide RIF in Hirschey's selected population were older than forty.

Defendant argues that performing a statistical analysis based on those who were terminated is not correct. Defendant argues that only the retention rates should be analyzed. As one court has stated:

> Mathematically speaking, retention rate analysis and layoff analysis are identical, like describing a glass half-full or half-empty. Preferring one approach over another makes little sense. The important questions would seem to be: (1) what percentage of employees laid off in a random selection would be [in the protected class]; and (2) what are the confidence intervals surrounding that outcome?

*Council 31, Am. Fed'n of State, County and Mun. Employees v. Ward,* 978 F.2d 373, 379 n. 3 (7th Cir.1992). It is within the district court's discretion to determine what method of proof is most appropriate. *Id.* at 379.

Hirschey's opinion is that there is a statistically significant difference in the layoff rates. Whether he used the correct population in his analysis is a question of fact. Plaintiff has established a prima facie case.

■ Defendant may still prevail on a motion for summary judgment under a disparate impact theory if it can demonstrate a legitimate business reason for the challenged practice. *Evers,* 241 F.3d at 953. A legitimate business reason is one where the challenged practice serves, in a significant way, the asserted explanation for the practice. *Wards Cove,* 490 U.S. at 659, 109 S.Ct. 2115. While financial distress is a legitimate reason for an RIF, it is not the only reason a business may engage in an RIF. *Regel,* 190 F.3d at 880; *Bashara v. Black Hills Corp.,* 26 F.3d 820, 824 (8th Cir.1994). For example, a company may decide to reduce the scope of its operations through an RIF. *Id.* at 825. A court does not sit as a "super-personnel" board to review the wisdom and fairness of a business judgment. *Regel,* 190 F.3d at 880.

■ Defendant alleges that the reason for its company-wide RIF is that it was in financial distress. Defendant alleges that the reason for eliminating the ICG was that it had been criticized, efforts to rehabilitate the ICG were ineffective, and the ICG was also in financial distress.

Plaintiff cites statements made by the president of Bobcat's parent company, Ingersoll–Rand, to rebut Defendant's allegation that it was in financial distress. The president stated that the company experienced record earnings in 2000, which was a 14% increase over 1999's earnings. The president also stated that the company would continue to hire for both factory and salaried positions and that Bobcat's sales had grown globally 10% in 2000. Assuming these statements and facts are true, this evidence contradicts Defendant's allegations of financial distress. Viewing the evidence in the light most favorable to Plaintiff, Defendant has failed to present a legitimate business reason for the company-wide RIF.

### B. Disparate Treatment

To establish a prima facie case of discrimination under a disparate treatment theory, a plaintiff must show that 1) he is a member of the protected age class, 2) was performing adequately in his job, 3) was fired, and 4) was subsequently replaced by a younger person after dismissal. *Keathley,* 187 F.3d at 919 (citing *Rothmeier v. Inv. Advisers, Inc.,* 85 F.3d 1328, 1332 n. 7 (8th Cir.1996)). In an RIF situation, the fourth factor does not apply. *Bashara,* 26 F.3d at 823. Instead, a plaintiff must present additional evidence that age was a factor in his termination. *Id.* Whether the employee was performing adequately is measured by what the employer could legitimately expect. *Id.* at 920.

Defendant does not dispute that Plaintiff meets the first three criteria of a disparate treatment theory. For the "additional evidence" showing under the disparate treatment theory, Plaintiff offers three items: 1) the statistical analysis, 2) Defendant's decision to only transfer the two youngest members of the ICG, and 3) age discriminatory comments made by employees of Bobcat and Ingersoll–Rand.

Plaintiff's statistical evidence is sufficient to serve as a piece of additional evidence for a disparate treatment theory. See *MacDissi v. Valmont Indus.,* 856 F.2d 1054, 1058 (8th Cir.1988) (accepting a statistical analysis based on two terminations in a nine-member department for a disparate treatment theory). Defendant's decision to only transfer the two youngest members of the ICG and terminate everyone else in the ICG is also a piece of additional evidence. Plaintiff provided an affidavit asserting that there were other open jobs within Bobcat that Petersen was qualified for, but he was not transferred to them. Only the two youngest members of the ICG were given this preferential treatment.

Plaintiff presents evidence of several age discriminatory comments that were heard by or related to the decision makers in this case. Gregory Schmalz, Bobcat's Vice President of Human Resources, was told at an Ingersoll–Rand meeting that Bobcat had promoted too many managers over the age of forty, and the company should stop doing that. During 2000 and 2001, as upper management positions became available, employees under the age of forty were chosen to fill the positions. Chuck Hoge, CEO of Bobcat, and Schmalz were present when the CEO of Ingersoll–Rand stated that it was a waste of money to train people in their late forties or early fifties. Viewing these comments and evidence in the light most favorable to Plaintiff could demonstrate a company wide animus toward older employees. *Hardin v. Hussmann Corp.,* 45 F.3d 262, 266 (8th Cir.1995). These age discriminatory comments and the promotion practice constitute pieces of additional evidence.

The Eighth Circuit has upheld a denial of summary judgment on a disparate treatment case when the additional evidence was even less than provided here. See *Hardin,* 45 F.3d at 266 (calling only two age discriminatory comments a "close question"). Viewed in the light most favorable to Plaintiff, he has provided sufficient additional evidence of age discrimination.

### II. Retaliation

Plaintiff alleges that Defendant refused to consider him for open positions within Bobcat and did not give him the position in Europe because he refused to sign a transition agreement and wrote a letter to Hoge stating that the layoffs violated federal law. To present a prima facie case of retaliation under the ADEA, a plaintiff must show that 1) he engaged in

protected conduct; 2) he was subjected to an adverse employment action by his employer at the time of, or after, the protected conduct occurred; and 3) there was a causal link between the protected activity and the adverse employment action. *Berg v. Bruce,* 112 F.3d 322, 328 (8th Cir.1997). A plaintiff only has to show that the retaliatory motive was "a contributing factor" as opposed to the sole reason for the adverse employment action. *Kneibert v. Thomson Newspapers, Michigan Inc.,* 129 F.3d 444, 454 (8th Cir.1997). If the plaintiff establishes a prima facie case, an employer may still prevail on a summary judgment motion if it can establish a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the employer establishes a nondiscriminatory reason, a plaintiff may still defeat summary judgment if he can establish that the reason given was a pretext for retaliation. *Id.*

There is no dispute that Plaintiff engaged in protected activity. As to the job in Europe, Defendant argues that the people deciding whether to hire Plaintiff, Jean Voorhees and Gui Kueppens, had no knowledge that Plaintiff was refusing to sign the ADEA waiver. Therefore, their decision not to hire Plaintiff could not have been as a result of his failure to sign the waiver. Plaintiff offers no evidence to contradict this.

Regarding other open jobs within Bobcat, Defendant argues that Plaintiff never applied for any. A plaintiff does not have to apply for a position if he alleges facts which, if proven, would be sufficient to establish that application was futile. *Winbush v. Iowa,* 66 F.3d 1471, 1481 (8th Cir.1995). Schmalz told Plaintiff that he would be unable to find employment within Bobcat at his salary level. Pl. Statement of Disputed Material Facts at ¶¶ 115, 212. Defendant argues that Plaintiff's application would not be futile and

points to the example of Mike Horan, another employee from the ICG, who was laid off and then applied for another position and was rehired. Def.'s Rule 7.1(B)(1) Statement of Undisputed Material Facts at ¶¶ 152, 153. Whether Plaintiff's application for another job with Bobcat would have been futile is a question of fact.

### III. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that there was extreme and outrageous conduct that was intentional or reckless, and this conduct caused severe emotional distress. *Dahlberg v. Lutheran Soc. Servs. of North Dakota,* 625 N.W.2d 241, 248 (N.D.2001) (citing *Muchow v. Lindblad,* 435 N.W.2d 918, 924 (N.D.1989)). A court initially decides whether the defendant's conduct reasonably may be regarded as extreme and outrageous. *Id.* at 249. The extreme and outrageous conduct must be so extreme in degree that it goes beyond all possible bounds of decency, or it is conduct that is utterly intolerable in a civilized society. *Id.* at 248.

Plaintiff alleges that his firing for a reason that was not credible and the subsequent retention of the two youngest members of his division is extreme and outrageous conduct. While a termination certainly causes stress and mental anguish in the person being terminated, *Dahlberg,* 625 N.W.2d at 249, it is not conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency.

### IV. Punitive Damages

Defendant seeks dismissal of the request for punitive damages because it argues that there is no independent basis for this award. A jury may award punitive damages if Plaintiff prevails on any of

his substantive claims. *Indemnified Capital Invs. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1413 (7th Cir.1993). The request for punitive damages is not an independent claim.

DECISION

Defendant's Motion for Summary Judgment on the ADEA, NDHRA, and retaliatory claims is DENIED. Defendant's Motion for Summary Judgment on the intentional infliction of emotional distress claim is GRANTED.

IT IS SO ORDERED.