# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-4090

_____

| | | |
|---|---|---|
| Barbara Dibartolo Keathley, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Ameritech Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 16, 1999

Filed: July 29, 1999

_____

Before BOWMAN and HEANEY, Circuit Judges, and LONGSTAFF, District Judge.[1]

_____

HEANEY, Circuit Judge.

Barbara Dibartolo Keathley appeals from a final judgment entered in United States district court granting summary judgment in favor of Ameritech Corporation and thereby dismissing her claim that she was fired in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34 (1998), and for recovery of unpaid commissions on state law theories of breach of contract and promissory estoppel.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

Keathley also appeals from an earlier adverse grant of a motion to dismiss her common-law cause of action for intentional infliction of emotional distress. The district court ruled that Keathley did not state a submissible case of age discrimination because she did not establish that age was a determinative factor in Ameritech's decision to fire her. The district court additionally ruled that Keathley did not establish any contractual obligation on the part of Ameritech. Reading the record in the light most favorable to Keathley persuades us that there exist genuine issues of material fact both as to the motivation underlying Keathley's termination and as to Ameritech's remaining contractual obligations to Keathley. We therefore reverse with respect to Keathley's ADEA and contract claims.

## I. BACKGROUND

At the time she was dismissed, Keathley was a 45-year-old manager, corporate accounts (MCA) for Ameritech Corporation. During her eight-plus year tenure with the company, Keathley held several sales positions and consistently received positive evaluations and promotions. Ameritech judged the performance of its MCAs almost exclusively by their ability to attain established sales quotas. By that calculus, Keathley was a superior employee. She consistently beat sales expectations by wide margins and was instrumental in landing and retaining large corporate accounts. Keathley regularly received honors and awards based on her sales performance and positive feedback from her clients.

In September 1994 Ameritech placed Bill Gibson in the position of general manager in St. Louis in order to direct a reorganization of that market. Shortly after the reorganization was instituted, Keathley began, for the first time in her career, to receive negative written memoranda. Over the weeks leading up to her termination on December 16, Keathley received a total of six negative memoranda documenting twenty different infractions. On appeal, Keathley contends that the documented infractions were de minimis in the context of Ameritech's established evaluation

policies and were pretext for age discrimination. Additionally, Keathley contends that Ameritech failed to pay her for certain commissions and other monies earned prior to her termination and engaged in conduct leading up to her termination that supports a claim for intentional infliction of emotional distress. By its order of April 19, 1998, the district court, inter alia, dismissed the latter allegation for failure to state a claim. On October 30, 1998, the district court granted the defendant's motion for summary judgment as to the ADEA and contract claims.

## II. DISCUSSION

Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, there exists no genuine issue of material fact. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Maitland v. University of Minn., 155 F.3d 1013, 1015-16 (8th Cir. 1998). This court reviews a grant of summary judgment de novo, applying the same standard as the district court. See Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 573 (8th Cir. 1997). "This court has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (citing cases). "'[S]ummary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999) (quoting Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 486 (8th Cir. 1998)).

The ADEA makes it unlawful "for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Protection under the ADEA extends to persons age forty and older. See 29 U.S.C. § 631. As Keathley's claims are largely based on circumstantial

evidence, the familiar burden-shifting scheme of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 800-04 (1973), applies. <u>See</u> <u>Tuttle v. Missouri Dept. of Agric.</u>, 172 F.3d 1025, 1029 (8th Cir. 1999); <u>Rothmeier v. Investment Advisers, Inc.</u>, 85 F.3d 1328, 1332 n.5 (8th Cir.1996) (explaining that although <u>McDonnell Douglas</u> was developed as a Title VII framework, we have likewise applied it to ADEA claims). The <u>McDonnell Douglas</u> analysis proceeds in three stages. Keathley must first present sufficient evidence to establish a prima facie case of age discrimination, thereby creating a legal presumption of unlawful discrimination. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993). The burden of production then shifts to Ameritech to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>See</u> <u>id.</u> at 506-07. Once Ameritech satisfies its burden of production, Keathley must establish a question of material fact as to whether the employer's proffered reason was pretextual and that she was the victim of intentional discrimination. <u>See</u> <u>id.</u> at 508. Throughout, the burden of persuasion remains with Keathley. <u>See</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

A. Prima Facie Case

In order to establish a prima facie case, Keathley must show that she is a member of the protected age class, was performing adequately in her job, was fired, and subsequently was replaced by a younger person after dismissal. <u>See</u> <u>Rothmeier</u>, 85 F.3d at 1332 n.7. On appeal, Ameritech contends that Keathley failed to establish a prima facie case both because she was not performing adequately at the time of her dismissal and was not replaced by a substantially younger employee.

The standard to be applied in assessing performance is not that of the ideal employee, but rather what the employer could legitimately expect. <u>See</u> <u>Cram v. Lamson & Sessions Co.</u>, 49 F.3d 466, 472 n.7 (8th Cir. 1995). There is little question but that Keathley's performance was adequate at the time of her termination. When Keathley was fired on December 16, 1994, she had achieved more than 300% of her

quarterly revenue quota and had sold more units on an annual basis than any other Ameritech salesperson. During the eight and one-half years prior to her dismissal, Keathley was Salesperson of the Year three times and runner-up on three other occasions. Three days prior to her termination, Keathley had sold approximately 1300 phones in one day, breaking her own one-day record for sales set a year earlier. Additionally, the record contains affidavits from Ameritech customers recounting Keathley's dedication and excellent record of customer service. Ameritech observes that while Keathley indeed achieved success as a salesperson, the record also reflects her failure to meet expectations outlined in the company's "Standards of Quality Performance." (See Appellee's Br. at 27.) Ameritech contends that Keathley was frequently tardy, neglected to return client phone calls, and did not get along well with her co-workers. These criticisms were recorded, however, during the relatively brief period of September through December 1994 and were, according to Keathley, merely pretext for age discrimination.[2] Moreover, Keathley's sales performance remained excellent throughout this period. Given that Keathley's corporate accounts supervisor identified generation of new sales and retention of existing customers as the two primary responsibilities for account managers, Keathley's performance was at least adequate at the time of her termination.

Ameritech also contends that Keathley was not replaced by a younger employee. It points to Wilson v. International Bus. Machs. Corp., 62 F.3d 237, 240-41 (8th Cir. 1995), for the proposition that where an ADEA plaintiff's duties are distributed to a number of employees, some of whom are within the protected class, the prima facie

_____

[2]Even giving full credit to the evidence of poor performance presented by Ameritech, we would find that Keathley established the element of adequate performance. As discussed below, countervailing evidence casts serious doubt on the veracity of the assessment of Keathley's performance presented by Ameritech. In addition, however, the simple fact of continuing exceptional sales performance by Keathley creates a genuine question of material fact precluding summary judgment on the issue of adequate performance.

case fails.  This reading of Wilson is at best incomplete.  In that case, the work of a terminated 52-year-old customer service representative was distributed to eight employees formerly under his supervision, three of whom were aged 50 or over, and others of whom were in their 40s.  See id. at 238-40.  The court, in concluding that such a circumstance did not satisfy the required showing of replacement by a younger worker, relied on Rinehart v. City of Independence, 35 F.3d 1263, 1266 (8th Cir. 1994).  In Rinehart we held it error for a district court to "require [plaintiff] to demonstrate as part of his prima facie case that his replacement came from outside the protected class of workers."  Id.; see also Kralman v. Illinois Dep't of Veterans' Affairs, 23 F.3d 150, 155 (7th Cir. 1994) ("Indeed, it is considered 'hornbook law' that the ADEA action can be based on discrimination between older and younger members of the protected class.").  The rule is that the plaintiff must show that she was "replaced by a person sufficiently younger to permit an inference of discrimination."  Rinehart, 35 F.3d at 1269 (quotation omitted).  Rather than adopting a formalistic rule of the type urged by Ameritech, the Wilson and Rinehart courts recognized that the "'elements of a prima facie case are flexible and vary depending on the factual situation giving rise to the dispute.'"  Wilson, 62 F.3d at 241 (quoting Rinehart, 35 F.3d at 1267); see also Hindman, 145 F.3d at 990-91 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)) (emphasizing that prima facie elements were "never intended to be rigid, mechanized, or ritualistic").  The point of the prima facie case is to demonstrate that an "adverse employment action occurred under circumstances which [give] rise to an inference of unlawful discrimination."  Wilson, 62 F.3d at 241 (internal quotation marks omitted) (quoting Rinehart, 35 F.3d at 1267).  The prima facie case is "generally sufficient to raise 'an inference of discrimination only because we presume [the employer's decisions], if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"  Rinehart, 35 F.3d at 1268 (quoting Furnco Constr. Corp., 438 U.S. at 577).

The circumstances presented by the record give rise to just such an inference. Keathley's largest accounts–St. John's Hospital, McDonnell Douglas, and Laclede

Steel–were all assigned upon her termination to Lori Kinder, a 31-year-old sales representative. Prior to the transfer of accounts, Kinder had been struggling to meet her quota. She had also complained to Connie Taylor, Keathley's supervisor at the time, that there were not enough accounts. In response to this and a similar complaint by Mary Roberts, another young salesperson, Taylor expressed frustration that the three older MCAs, including Keathley, "would not give up their accounts," and told Lori Kinder that "we're working on trying to get two new lists together . . . for you and . . . Mary Roberts." (See J.A. at 323, 383.) After the transfer of accounts, Kinder substantially exceeded her goals. Keathley alleges that her termination occurred as part of a larger reorganization designed to shift sales responsibility to younger employees. Indeed, by October 1994, one year after the inception of the reorganization, all but one MCA was under the age of 40.[3] The fact that most of Keathley's lucrative accounts were reassigned to Kinder and Roberts,[4] combined with surrounding circumstances suggestive of impermissible motivation, satisfies the requirement of demonstrating that she was replaced by younger employees. See Hindman, 145 F.3d at 991-92; Rinehart, 35 F.3d at 1266-67.

B. Employer's Nondiscriminatory Reason For Discharge

Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. See Rothmeier, 85 F.3d at 1332. Ameritech forwards a list of legitimate reasons for Keathley's termination. As noted above, in October 1994 Ameritech began to issue written memoranda to Keathley detailing various

---

[3]Lisa Cahalan turned 40 before Keathley's termination. However, she did not receive any of Keathley's active accounts.

[4]Ameritech contends that some of Keathley's accounts were transferred to older employees. However, Keathley identified those accounts as requiring little work or generating little revenue.

shortcomings in her performance. The numerous alleged problems include consistent late arrival to meetings, inability to maintain productive working relations with fellow employees,[5] failure to return customer phone calls or empty her phone-mail box, failure properly to handle a customer request for sponsorship of a golf tournament, failure to handle appropriately a large account, and failure to review carefully materials distributed to a client as evidenced by submission of a large print order containing a typographical error. The aggregate effect of the enumerated failures is to provide a legitimate reason for Ameritech's decision to discharge Keathley, thereby rebutting the presumption of discrimination created by the prima facie case. See Hicks, 509 U.S. at 507.

C. Keathley's Evidence of Pretext and Age Discrimination

After Ameritech put forward a nondiscriminatory justification for her termination, Keathley can only avoid summary judgment by "present[ing] evidence that considered in its entirety, (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Hindman, 145 F.3d at 991. This second part of the summary judgment test "sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext 'suffice[s] to show intentional discrimination.'" Widoe v. District #111 Otoe Cty. Sch., 147 F.3d 726, 731 (8th Cir. 1998) (quoting Rothmeier, 85 F.3d at 1337). The Supreme Court has stated that where the plaintiff provides evidence suggestive of intentionally mendacious pretext, that showing in combination with the prima facie case "may . . . suffice to show intentional discrimination." Hicks, 509 U.S. at 511. However, as this court recently reaffirmed in Widoe, "not every

---

[5]According to Ameritech, Keathley's most grievous failure in this regard occurred when she "badgered" customer service representatives in front of a client by claiming that they had given false information.

plaintiff who sufficiently calls into question the truthfulness of the defendant's proffered explanation survives summary judgment." 147 F.3d at 731 (citing Rothmeier, 85 F.3d at 1337). In some instances the circumstances of the case, though suggestive of pretext, will nonetheless be inconsistent with age discrimination. In Rothmeier itself, for example, the plaintiff's allegations concerning the motivation underlying the employer's pretext–avoidance of an SEC investigation–undercut rather than supported the employee's age discrimination claim. See 85 F.3d at 1338. By contrast, in Widoe we found that in the circumstances of that case, no analogous factual circumstances inconsistent with an inference of age discrimination were presented. See 147 F.3d at 731.

Reading the record in the light most favorable to Keathley, as we must at this stage, places this case squarely within those identified by Hicks as permitting the trier of fact to infer the ultimate fact of intentional discrimination. See 509 U.S. at 511. Appellant presents a point-by-point refutation of the problems identified by Ameritech as justification for her termination. While an exhaustive presentation of the factual disputes would necessitate an opinion of unwieldy length for this stage in the proceedings, several examples serve to illustrate the pattern.

Key factors in Keathley's termination were her tardiness to meetings and other company events and failure to check or empty her voice-mail account or return client messages. Mary Roberts, who worked with Keathley as an MCA throughout 1994, testified by affidavit that MCAs and supervisors frequently arrived late to those meetings without experiencing any negative repercussions.[6] Roberts stated that "if

---

[6]In fact, Roberts testified that Connie Taylor, Keathley's supervisor, was notoriously late and failed to return calls to the extent that it became a standing joke among other employees. When Taylor was temporarily placed on probation for this behavior, Roberts testified that she exhibited no improvement, but was nonetheless promoted to a high-ranking executive position.

Ameritech has a written policy on tardiness for sales meetings . . . I never saw it enforced . . . by management." (J.A. at 323.) Such evidence of disparate treatment is highly relevant to showing pretext. See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994). In addition to evidence suggestive of disparate treatment, the record also calls into question the veracity of the memoranda themselves. In one instance where Keathley received a written reprimand for tardiness, her behavior was a function of her attempt to follow company policy by prioritizing customer needs. In another instance, Keathley testified that her then supervisor, Mike Franzoi, verbally excused her tardiness for a training class, yet she later received a written reprimand. In yet another instance, Keathley received a written reprimand for arriving late to a meeting despite the fact that she and Franzoi had agreed to start the meeting whenever she arrived. The conflicting stories, given the supporting affidavits attesting to Keathley's professionalism and Ameritech's enforcement of its policies, create a genuine issue of material fact.

Mary Roberts also testified that it was not uncommon for MCAs' voice-mail boxes to fill to capacity during periods when large accounts were being serviced and that she was never reprimanded when her own voice-mail box filled because of such commitments. Joan Luning similarly testified that MCAs could on occasion expect their voice-mail boxes to reach capacity while they were attempting to close a large corporate account. During the time period at issue, Keathley was conducting "Ameritech Days" in conjunction with the St. John's Hospital deal, which resulted in her landing what is now Ameritech's largest corporate account. She testified that because of the many large accounts she maintained, she received eighty to ninety phone calls per day during that period and could not answer them due to company prioritization policy.[7] Luning stated that to her knowledge, no MCA other than

---

[7]Additionally, the evidence indicates that Ameritech's voice-mail system was not equipped to handle that volume of calls.

Keathley was ever reprimanded for failing to empty a voice-mail box. Such evidence of disparate treatment supports pretext. See Davenport, 30 F.3d at 945.

Ameritech cited insufficient attention to detail in dealing with specific client accounts as an additional ground for dismissal. While the record presents specific complaints by Ameritech pertaining to client accounts, it is also replete with glowing client assessments of Keathley's exceptional service and attention to detail. Ameritech characterizes an exchange involving Keathley and a customer service representative as "badgering" an employee in front of a client. According to Keathley, however, she merely advised the employee that she had been quoting an incorrect price. The client apparently viewed the exchange similarly, as it later wrote Keathley a recommendation praising her "complete[] professional[ism]." (J.A. at 363.) Mary Roberts testified that during periods when MCAs landed a large corporate account, tension between MCAs and customer service representatives was common, but that to her knowledge no representative other than Keathley was ever reprimanded due to such relational problems. Again, the conflicting evidence creates an issue of material fact precluding summary judgment.

Distinct from the permissible inference of discrimination flowing from the allegedly contrived nature of Ameritech's proffered explanation for her termination, Keathley has also presented evidence that creates a reasonable inference that age discrimination was the determinative factor in her termination. The district court found that the firing of older employees during the reorganization period of September 1994 to October 1995 was not sufficient to create an inference of impermissible age discrimination. While we agree that timing alone does not create a presumption of age discrimination, see Nelson v. J.C. Penney Co., 75 F.3d 343, 346-47 (8th Cir.), cert. denied, 519 U.S. 813 (1996), it may lend force to contemporaneous evidence of age discrimination, depending on the quality of that evidence, see Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir.), cert. denied, 502 U.S. 940 (1991) (holding that inference cannot be based on timing alone but must take into account other evidence); Caudill v.

Farmland Indus., Inc., 919 F.2d 83, 86-87 (8th Cir. 1990) (stating that inference based on temporal proximity between filing of age discrimination complaint and firing would be "rank speculation" given force of other evidence presented). During the reorganization period highly successful salespersons over the age of 45 were replaced by individuals under the age of 35. This pattern "'is certainly not conclusive evidence of age discrimination in itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome.'" Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997) (en banc) (quoting Morgan v. Arkansas Gazette, 897 F.2d 945, 951 (8th Cir. 1990) (citation omitted)).

Here, the evidence permits an inference that the dismissal of older sales representatives and subsequent reassignment of their accounts to significantly younger representatives was a function of age discrimination. Despite the existence of legitimate grounds for termination, Ameritech's account of its reasons for terminating older, successful salespersons, remains suspicious.[8] According to Mary Roberts, Mike Franzoi called her into his office at some point prior to November 19, 1994 to ask if she could handle one of Keathley's accounts. Roberts was puzzled and asked why he was making such an inquiry. Franzoi replied that he did not know, but again asked if she could handle the account. (J.A. at 325.) As related above, in response to complaints

---

[8]Six months after Keathley's termination, Ameritech also terminated Joan Luning, at the time 48-years old and the company's best performer in the two months leading up to her termination. Her termination also occurred under incredible circumstances. Luning was told that she failed to pass a written test administered as part of the reorganization of the direct sales force. After she requested to review the test, Ameritech changed its story, stating that she was terminated for failing to meet her quota with respect to pagers. Prior to that time, Ameritech had not enforced a quota for pagers. Three days prior to her being fired, Bill Gibson had extolled her virtues at an awards luncheon, stating that "what Joan Luning did last month is amazing." (App. at 334.) Luning brought an age discrimination action against Ameritech, which was subsequently settled.

of younger sales representatives concerning a lack of accounts, Connie Taylor expressed frustration with the status quo and stated that management was trying to put together lists for the younger employees. Perhaps most significant, however, is evidence suggesting that Ameritech's stated reason for firing Keathley was a sham. At the time of her termination, Keathley was told by Franzoi that the decision was due in part to her failure to land a large contract with St. John's Hospital. In fact, Keathley had obtained the contract and delivered it to Franzoi four days earlier. In order to cover up this inconsistency, Franzoi removed Keathley's name from the contract and had St. John's sign a second contract.[9] When deposed on the subject, Franzoi could offer no explanation for the decision to backdate the contract, or for that matter as to why a second contract was necessary at all, other than to state that December 15 was the date he understood Ameritech's relationship with St. John's to have begun. (See J.A. at 482-83.) Though Ameritech in its brief asserts that the second contract was necessary because Keathley had mishandled the deal, an affidavit given by St. John's Hospital's director of finance and accounting–the individual who signed both contracts for St. John's–indicates that the only difference of which he was aware between the earlier contract and the one subsequently presented by Mr. Franzoi is that the later contract substituted the name of Lori Kinder–one of Keathley's replacements–for that of Barbara Keathley. A reasonable interpretation of the events leading up to Keathley's dismissal, considering the evidence in its entirety, is that Ameritech dismissed an older sales representative in order to replace her with younger representatives. Thus summary judgment was inappropriate as to Keathley's age discrimination claim.

D. Ameritech's Remaining Contractual Obligations

In her second count, Keathley alleges the existence of a contract whereby Ameritech would pay her commissions on corporate accounts secured by her "for as

---

[9]The second contract was signed on December 22, but backdated to December 15 by Franzoi.

long as those accounts remained with Ameritech." (Am. Compl. ¶ 30.) Keathley alleges that Ameritech owes her commissions under this arrangement and additionally owes her vacation pay, prizes, and other compensation. For summary judgment, Ameritech submitted into evidence a check for the amount of $34,711, representing payment for commissions earned in December 1994 and 108 hours of unused vacation time accrued during Keathley's employ. (Def.'s Stmt. ¶¶ 93-94.) The district court construed the defendant's statement to mean that Ameritech was contending that Keathley had been paid in full. However, Keathley submitted an affidavit stating that the $34,711 did not constitute full payment of monies owed to her for commissions, prizes, and vacation-equivalency pay. Federal Rule of Civil Procedure 56(c) provides that the party moving for summary judgment has the burden of showing that no genuine issues exist as to any material fact. See Pfizer v. International Rectifier Corp. (In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions), 538 F.2d 180, 184 (8th Cir. 1976). Since Ameritech failed to present any evidence that the check represented full payment on Keathley's claims, the material issue remains in dispute.[10] Accordingly, summary judgment was inappropriate as to Keathley's contract claim.

E. Intentional Infliction of Emotional Distress

Keathley argues that the district court erred in dismissing her claim of intentional infliction of emotional distress for failure to state a cause of action. This court reviews de novo a motion to dismiss. See de Llano v. Berglund, 1999 WL 493251, at *1 (8th Cir. July 9, 1999). We agree with the district court's conclusion that Keathley failed to allege conduct by Ameritech that is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

---

[10]On appeal Keathley notes that she sent a letter to Ameritech, dated May 15, 1995, itemizing the disputed compensation. While the existence of the letter does not color our conclusion that Ameritech never asserted that the $34, 711 represented final payment, it explains why the company could not make such a representation.

-14-

atrocious, and utterly intolerable in a civilized community.'" (Mem. and Order at 9) (quoting Polk v. INROADS/St. Louis, Inc., 951 S.W.2d 646, 648 (Mo. App. 1997) (citing Restatement (Second) of Torts § 45 cmt. d (1965))).[11]  The facts presented by Polk, and relied upon by Keathley, are distinguishable from those in the present case. In Polk, an at-will employee was subjected to a pattern of extreme and outrageous conduct that required medical treatment for severe emotional distress. See 951 S.W.2d at 648.  While the record supports Keathley's allegations that Ameritech created a contrived file in order to justify her dismissal, this circumstance falls short of the behavior held by Missouri courts to support an action for intentional infliction of emotional distress.  Accordingly, the district court's dismissal of Keathley's claim for intentional infliction of emotional distress is affirmed.

## III.  CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment as to Keathley's age discrimination and contract claims. We affirm, however, the grant of Ameritech's motion to dismiss as to Keathley's claim for intentional infliction of emotional distress.  The case is remanded for proceedings not inconsistent with this opinion.

---

[11]Because we agree with the district court's alternative holding, we have no occasion to address the question of whether, under Missouri law, Keathley's cause of action is an attempt to subvert the employee-at-will doctrine by "cloaking a claim for wrongful termination under the guise" of an action for emotional distress. Neighbors v. Kirksville College of Osteopathic Med., 694 S.W.2d 822, 824 (Mo. App. 1985).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.